UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ZEBELUM ANNU EL,<br><br>Plaintiff,<br><br>v.<br><br>SEA MAR COMMUNITY HEALTH CENTERS; SANDY HERNANDEZ,<br><br>Defendants. | CASE NO. 23-cv-2007-JNW<br><br>SUMMARY JUDGMENT ORDER |

## 1. INTRODUCTION

This matter comes before the Court on Defendants Sea Mar Community Health Centers ("Sea Mar") and Sandy Hernandez's motion for summary judgment. Dkt. No. 40. Having reviewed the parties' briefing, the record, and the law, the Court concludes that pro se Plaintiff Zebelum Annu El has produced no evidence on which a reasonable jury could return a verdict in his favor on his federal-law claims. Those claims fail as a matter of law. Without any viable federal-law claims, the Court declines to exercise supplemental jurisdiction over Annu El's remaining state-law claims. The Court GRANTS the motion for summary judgment, Dkt. No. 40, and DISMISSES this case in its entirety.

SUMMARY JUDGMENT ORDER - 1

## 2. BACKGROUND

The events giving rise to this case occurred during the COVID-19 pandemic, when healthcare facilities implemented specific protocols to minimize the spread of the virus.

On August 18, 2021, Plaintiff Zebelum Annu El, a Black man, visited the Sea Mar Medical Clinic in Kent, Washington, for an appointment with his primary care provider. Dkt. Nos. 41-1 at 2–3; 45 at 1. Sea Mar, which operates this clinic, receives federal funding to provide healthcare services.

At the time of Annu El's visit, Sea Mar had implemented special precautions to prevent the transmission of COVID-19 in its clinics, including outdoor screening procedures for patients and an indoor masking requirement. Dkt. No. 41-4 ¶¶ 8, 9. These measures were taken in compliance with state regulatory guidance. *Id.*

The parties present conflicting accounts of Annu El's arrival at the clinic. According to Defendants, Annu El refused to comply with the outdoor screening procedures, falsely claimed to be vaccinated, and physically pushed aside the Sea Mar staff member conducting a mandatory screening of patients before they entered the facility. *See* Dkt. Nos. 41-1; 41-2; 41-3 at 4.

Annu El disputes this account, maintaining that he completed the screening, including a temperature check; received a mask from the Sea Mar screener; applied the mask to his face; and entered peacefully and without pushing anyone. *See* Dkt. No. 41-3 at 6, 9.

The parties do not dispute, however, what occurred after Annu El entered the facility. After Annu El entered the facility, he checked in for his appointment, took a

seat in the waiting room, and pulled down his mask to eat a banana. Dkt. No. 41-3 at 8. Immediately, Defendant Sandy Hernandez, a Sea Mar employee, approached Annu El and instructed him to apply his mask in compliance with the facility's COVID-19 safety requirements. *Id.* Annu El refused this instruction, asserting that state regulations permitted individuals to remove their masks while eating indoors. *Id.* at 9. This interaction escalated into an argument lasting at least five or ten minutes, during which Annu El's mask remained lowered throughout the argument and multiple Sea Mar employees got involved. *Id.* at 13–26. According to Defendants—though Annu El disputes this—Annu El swore and yelled during the argument and used the term "Hispanic" in a derogatory manner. Dkt. No. 41-1.

The argument ended when medical staff called Annu El from the waiting room for his appointment. Dkt. No. 41-3 at 17. While Annu El was visiting with his doctor, Hernandez called the police to have Annu El removed from the facility as an "unwanted subject," informing the dispatcher that Annu El had caused a scene and pushed an employee. Dkt. Nos. 41-1; 41-2; 41-3. When the police arrived, the employee responsible for outdoor screening and Hernandez spoke with them, and Hernandez told the police that she would like Annu El to be "trespassed for life" from Sea Mar. Dkt. No. 41-1 (police report).

During Annu El's appointment, his doctor learned that the police had been called and were on-site. Dkt. No. 41-3 at 9. The doctor accompanied Annu El to Annu El's car. *Id.* at 9–10. While they were walking to the car, the police informed Annu El that he was banned from the facility for life and would be arrested if he returned. *Id.*; Dkt. No 41-1. No arrest was made, but according to the police report,

SUMMARY JUDGMENT ORDER - 3

"Kent Records was contacted and requested to enter [Annu El] into the system as trespassed for life from Seamar." Dkt. No. 41-1.

On December 29, 2023, Annu El—proceeding pro se and in forma pauperis (IFP)—initiated this lawsuit. Dkt. Nos. 1, 6. On May 24, 2024, he filed an amended complaint. Dkt. No. 23. He sues Sea Mar and Hernandez for (1) racial discrimination in violation of Title VI of the Civil Rights Act; (2) racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment; and (3) tortious outrage. *Id.* at 4.

### 3. DISCUSSION

#### 3.1 Legal standard.

"[S]ummary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (citation omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, courts must view the evidence "in the light most favorable to the non-moving party." *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (internal citation omitted).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted). Yet, despite this relaxed pleading standard,

SUMMARY JUDGMENT ORDER - 4

pro se plaintiffs, to survive summary judgment, must present evidence that establishes a genuine issue of material fact. Summary judgment is warranted when there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party may not rely on the mere allegations in the pleadings to show a "genuine issue for trial," but must instead "set forth specific facts[.]" *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir.2005) (quoting *Liberty Lobby*, 477 U.S. at 256). This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

**3.2 Annu El's Equal Protection claim fails as a matter of law because the state-action requirement is not satisfied.**

While it is unclear from the amended complaint whether Annu El brings an Equal Protection claim—*see* Dkt. No. 23 at 4 ("Enumeration of all factoids germane, to Title VI Violation, and the equal Protection Clause.")—his subsequent filings suggest that he did intend to bring such a claim. *See* Dkt. No. 44 at 5; *see also* Dkt. Nos. 49 at 2, 9–11, 23; 51 at 2, 4, 13–14, 52 at 13, 16–17. As such, construing the complaint liberally, the Court concludes that Annu El brings a claim under Section 1983 alleging that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.[1]

---

[1] While not explicitly pled, 42 U.S.C. § 1983 ("Section 1983") is the procedural vehicle by which Annu El's constitutional claims must be brought. *See Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (1992) ("[L]itigant[s] complaining of a violation of constitutional rights must utilize 42 U.S.C. § 1983.").

Defendants correctly assert in their reply brief that "[b]ecause Defendants are not state actors, any attempt to assert constitutional claims against them fails as a matter of law." Dkt. No. 46 at 3. This argument rests on the state-action requirement—the "commonplace" rule that "rights under the Equal Protection Clause… arise only where there has been involvement of the State or of one acting under the color of state authority" and that the Equal Protection Clause "'does not… add any thing to the rights which one citizen has under the Constitution against another.'" *United States v. Guest*, 383 U.S. 745, 755 (1966) (quoting *United States v. Cruikshank*, 92 U.S. 542, 554–55 (1875)).

Annu El challenges the state-action requirement in his supplemental filings. *See* Dkt. Nos. 49, 51, 52. Citing a breadth of legal-academic authorities, he argues that rigorous application of the state-action requirement weakens the Fourteenth Amendment by immunizing private discrimination from constitutional scrutiny; on this basis, he suggests that governmental failure to eradicate pervasive private racial discrimination *should* create constitutional liability. *See, e.g.*, Dkt. No. 52 at 16–17.

As a normative matter, Annu El may be correct. But as a legal matter, he is not. Annu El has not sued the police or the City of Kent. Instead, his claims target Sea Mar and Hernandez, neither of whom are state actors. The Ninth Circuit has made clear that "receipt of federal and state funds conditioned on compliance with anti-discrimination laws is insufficient to convert private conduct into state action." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1014 (9th Cir. 2020) Therefore, Annu

SUMMARY JUDGMENT ORDER - 6

El's Equal Protection claims against Sea Mar and Hernandez fail as a matter of law.

### 3.3   Sea Mar is entitled to summary judgment on Annu El's Title VI claim against it because Annu El offers no evidence of racial animus or pretext.

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The statute creates a private right of action for damages and injunctive relief. *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001). To prevail on such a claim, the plaintiff must show (1) that the entity discriminated on the basis of a prohibited ground, and (2) that the entity receives federal assistance. *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994) (citations omitted), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001); *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1242 (9th Cir. 2021).

"Private parties seeking judicial enforcement of Title VI's nondiscrimination protections must prove *intentional* discrimination." *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1242 (9th Cir. 2021) (emphasis added) (citing *Alexander*, 532 U.S. at 281). The *McDonnell Douglass* burden-shifting framework applies. *Rashdan v. Geissberger*, 764 F.3d 1179, 1182 (9th Cir. 2014). Under this framework, "[f]irst, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination." *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450

SUMMARY JUDGMENT ORDER - 7

U.S. 248, 252–53 (1981)). "Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [adverse action]." *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)). "Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)).

Annu El has presented no evidence that Sea Mar or Hernandez intentionally discriminated against him on the basis of his race. Viewing the evidentiary record in the light most favorable to Annu El, the Court assumes that Annu El did not physically push any Sea Mar employee or otherwise refuse to comply with Sea Mar's outdoor screening procedures before entering the clinic. Still, the undisputed evidence reveals that Annu El refused to wear a mask while inside the clinical waiting room; that he had a heated argument with Sea Mar staff about this refusal; that his mask remained lowered throughout this argument, potentially endangering others around him; and that Hernandez called the police to have him removed only after this incident. There is no evidence that Hernandez called the police because of racial animus against Annu El.

Instead of specific evidence of discrimination in his case, Annu El relies on broader societal patterns. He provides extensive secondary-source evidence documenting the general social prevalence of police violence against Black men—violence that, according to these sources, often begins with 9-1-1 calls reporting

SUMMARY JUDGMENT ORDER - 8

Black people as "unwanted subjects." *See, e.g.*, Dkt. Nos. 44-1 at 1–11, 17–19, 21–29; 45 at 2–4; 47 at 11–18, 23–25; 49 at 35–38. He cites empirical evidence that a disproportionate number of "unwanted subject" emergency calls in Washington involve Black people, and that "Black Americans are 2.5 times more likely to be killed by police than White Americans." Dkt. No. 45 at 3. Defendants do not dispute these empirical assertions.

Annu El attempts to "establish a prima facie case using [this] data," arguing that because 9-1-1 calls targeting "unwanted subjects" disproportionately target Black men, "the burden of proof" is "shift[ed]… to the opposing party." Dkt. No. 49 at 7. But even if the Court were to accept this approach and find that Annu El had established a prima facie case, it would merely shift the burden to Defendants to cite a legitimate, nondiscriminatory reason for their actions. *See Rashdan*, 764 F.3d at 1182. Defendants easily meet this burden. The undisputed facts indicate that Defendants summoned law enforcement to remove Annu El only after he refused to comply with their indoor-masking requirement and engaged in a heated argument with clinical staff, potentially endangering the health of the staff and other patients around him.

And Annu El provides no evidence at all to suggest that Sea Mar's reasons for excluding him from its facilities were pretextual. *See also, e.g.*, *Ewers v. Columbia Med. Clinic*, Case No. 3:23-cv-0009IM, 2023 WL 5629796, at *5 (D. Or. Aug. 31, 2023) (dismissing ADA claim for failure to state a claim in similar circumstances, reasoning that "Defendants were aware that, at the time that Plaintiff refused to wear a mask, the leading public health authority in the country recommended

SUMMARY JUDGMENT ORDER - 9

masking in public health settings to prevent the spread of COVID-19"); *Metcalf v. TRA-MINW PS*, 3:24-CV-5288-DWC, 2024 WL 4389239, at *5 (W.D. Wash. Oct. 3, 2024) (in similar circumstances, rejecting discrimination claims, reasoning that "[a]s [plaintiff] refused to properly wear a face covering, Defendants assessed that [plaintiff's] desire to be treated unmasked (or improperly masked) posed a direct threat to other patients and employees"). He offers no examples of differential treatment of similarly situated non-Black patients who refused to wear masks, no statements indicating racial bias by Sea Mar staff, and no other evidence from which a reasonable jury could infer that his race, rather than his conduct, motivated Sea Mar's actions.

As such, the Court concludes that Annu El has failed to set forth specific facts to create a genuine issue for trial as to the question of intentional discrimination. Accordingly, Sea Mar is entitled to summary judgment on Annu El's Title VI claim.[2]

### 3.4 Hernandez is entitled to summary judgment on Annu El's Title VI claim against her because Title VI claims cannot be brought against individuals.

Title VI claims against individuals like Hernandez are not legally viable. Title VI specifically targets discrimination by "programs or activities" receiving federal funding, not individual employees. *Ogando v. Natal*, No. 23-CV-02221-JSC,

---

[2] This conclusion does not represent a judicial endorsement or criticism of Sea Mar's decision to contact law enforcement. Healthcare facilities naturally weigh various considerations when determining their approach to patient compliance issues, including the full spectrum of available interventions and their therapeutic mission, hopefully only calling the police when there's a clear and immediate danger to themselves or others.

SUMMARY JUDGMENT ORDER - 10

2023 WL 8191089, at *7 (N.D. Cal. Nov. 27, 2023) ("So, 'the text of Title VI also precludes liability against those who do not receive federal funding, including individuals.'" (quoting *Shotz v. City of Plantation*, 334 F.3d 1161, 1169-70, n.11 (11th Cir. 2003)); *see also Mendoza v. Inslee,* No. 19-cv-06216-BHS, 2020 WL 1271574, at *4 (W.D. Wash. Mar. 17, 2020) ("defendants in their individual capacities are not subject to suit under Title VI" because "Title VI is directed toward programs that receive federal financial assistance[.]" (citing *Corbin v. McCoy*, 3:16-cv-01659-JE, 2018 WL 5091620, at *7 (D. Or. Sept. 24, 2018)).

Annu El argues that "Hernandez was not acting as an individual, but was in her official capacity." Dkt. No. 44 at 2. This distinction doesn't save his claim. To be sure, some courts have held that "when a Title VI claim is brought against an individual acting in [their] official capacity, and the parties are seeking injunctive relief as opposed to monetary damages, courts have allowed the claims to survive a motion for dismissal," *Rios-Diaz v. Butler*, No. CV-13-77-BU-DLC-CSO, 2014 WL 12591836, at *2 (D. Mont. July 25, 2014), but official-capacity suits essentially function as actions against the entity the officer represents, *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). So regardless of capacity, Annu El's Title VI claim against Hernandez fails for the same fundamental reason as his claim against Sea Mar itself: the absence of evidence showing racial animus motivated Hernandez's actions. *See* Section 3.3.

**3.5   The Court declines to exercise supplemental jurisdiction over Annu El's remaining state-law claims.**

Having determined that Annu El's federal claims cannot proceed, the Court must address its jurisdiction over his state-law claims. With dismissal of Annu El's federal-law claims, the Court lacks original jurisdiction over Annu El's remaining state-law claims for tortious outrage against Hernandez and Sea Mar. In such circumstances, federal courts typically decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Following this well-established practice, the Court declines to exercise supplemental jurisdiction over Annu El's state-law claims.

## 4.   CONCLUSION

The Court FINDS that Annu El has failed to raise a jury-triable question of fact regarding Defendants' liability on his federal-law discrimination claims. The Court therefore DISMISSES those claims with prejudice. The Court DECLINES to exercise supplemental jurisdiction over Annu El's remaining state-law claims and therefore DISMISSES those claims without prejudice.

Defendants' motion for summary judgment is GRANTED. Dkt. No. 40. Defendants' motion to dismiss is denied as moot. Dkt. No. 24.

Dated this 31st day of March, 2025.

Jamal N. Whitehead
United States District Judge